IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARGARET LORSBACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-CV-18-SMY-DGW |
| | ) |
| PIONEER RESTAURANTS, L.L.C., et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Margaret Lorsbach originally filed the instant action in the Seventh Judicial Circuit Court, Jersey County, Illinois, asserting negligence and premises liability related to her falling outside a Hardee's Restaurant owned and operated by Defendants Pioneer Restaurants, L.L.C. and Hardee's Restaurants, L.L.C. (Doc. 1-1).[1] The case was subsequently removed to this Court based on diversity jurisdiction. Now pending before the Court is Defendants' Motion for Summary Judgment (Doc. 19). Plaintiff filed a Response (Doc. 23) and later filed a supplement to her Response (Doc. 30).[2] For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**.[3]

---

[1] Tony Perry (erroneously named as "Tony Terry") was also sued in the state court Complaint but was dismissed from the case prior to removal. (Doc. 1-2).

[2] Defendants have filed a Motion to Strike the supplemental pleading (Doc. 31) as having been filed without leave, and without the justification of new law or facts. Plaintiff subsequently filed a Motion for Leave (Doc. 32). The supplement pertains to Plaintiff's expert report (issued after the deadline for responding to summary judgment) and the deposition of Todd Pahl, corporate representative for Defendant Pioneer (taken after the response deadline). Although Plaintiff's filings stretch Local Rule SDIL-LR 7.1(c) to its breaking point, the Court will exercise its discretion and consider the materials included in the supplemental filing.

[3] Plaintiff has also filed for leave to amend her Complaint to add counts regarding failure to adequately train (Doc. 41), which the Court addresses by separate Order.

## Factual Background

On November 3, 2015, Plaintiff and her husband, Charles Lorsbach, visited the Hardee's Restaurant located at 528 South State Street in Jerseyville, Illinois. (Deposition of Margaret Lorsbach, Doc. 19-2 at 13:9-21; 28:9-11). They parked on the south side of the restaurant and walked across a portion of the parking lot that included the drive-through lane toward the entrance to the building on that side. (*Id.* at 18:10-17; 23:8-16; 25:23-26:7). Before the south entrance, there is a rise (alternately described by the parties as a "lip" and a "curb") creating a raised walkway area around the building toward the south entrance.

Todd Pahl, Defendant Pioneer's corporate designee estimated that between 25,000 and 30,000 customers per year enter through that area. (Deposition of Todd Pahl, Doc. 30 at 24:14-25:9). Although Plaintiff's Complaint alleges that prior to the incident, the parking lot asphalt and drive-through lane area had been "cut out and new concrete was poured, resulting in a two or more inch difference in height between the parking lot and the sidewalk adjacent to the south entrance" (Doc. 1-1 at ¶10), during his deposition, restaurant manager Tony Perry testified that there had been no construction work on the exterior of the restaurant since he began working at that location in June 2014. (Deposition of Tony Perry, Doc. 23-2 at 15:8 and 35:14-18). He also testified that there had been no other falls in that area during that period. (Doc. 19-5 at 56:8-19).

The drive-through lane is a 15-foot wide slab of concrete surrounded by asphalt, and the curb and sidewalk are cast-in-place concrete. (Affidavit of architect Gregory Wisniewski, Doc. 19-3 at ¶6). The precise height of the lip is a matter of some dispute, but is at least 1 7/8 inches tall. (*Id.* at ¶8). The restaurant has handicap-reserve parking spaces, as well as a "barrier-free accessible route" on both sides of the restaurant from those spaces. (Doc. 19-5 at ¶11).

Plaintiff had a handicap placard and license plate, but she and her husband never used the handicap parking spaces. (Doc 19-2 at 22:4-23:7).

On the date in question, Plaintiff "stubbed her toe on the little lip of concrete" as she was attempting to step up from the parking lot surface onto the sidewalk. (*Id.* at 23:8-16, 29:10-19). Plaintiff initially testified that she stubbed her left foot, but didn't recall whether her right foot had made it up on the sidewalk. (*Id.* at 31:2-7). Upon reviewing the surveillance video later in her deposition, she then testified that she put her right foot up on the sidewalk first. (*Id.* at 98:13-23). Plaintiff was carrying a cane in her left (dominant) hand at the time she fell (*Id.* at 26:8-16; 27:20-28:2). There is a short railing running parallel to the curb, but Plaintiff testified that she would not have used the railing because it was on her left side where she was carrying her cane. (*Id.* at 30:2-17). Plaintiff fell, hitting her head and both knees. (*Id.* at 36:23-37:17). She sustained a shattered kneecap and a "bump on the head" as a result of her fall. (*Id.* at 54:21-23).

Plaintiff testified that she and her husband had visited the restaurant about twice a week for approximately two years prior to the accident, including several days beforehand. (*Id.* at 14:3-21). They had walked from the the same area of the south parking lot to the south entrance at least 20 to 30 times without incident (Doc. 19-2 at 23:20-24:9), and had last parked in that area and used the south entrance within a month prior to the incident. (*Id.* at 25:12-22). The area looked the same to Plaintiff on the date of the incident as it had on the prior occasions. (Doc. 19-2 at 30:20-31:1).

Plaintiff's husband, Charles Lorsbach confirmed that they had walked the same path numerous times and that he was aware of the step-up prior to November 3, 2015. (Deposition of Charles Lorsbach, Doc. 19-4 at 13:1-18). He recalls that they had last parked on the south side

of the restaurant and walked the same path into the restaurant approximately three days before the incident. (*Id.* at 26:7-27:8).

Plaintiff claims that the difference in height between the sidewalk and the drive-through lane of the parking lot created a tripping hazard and an unreasonable risk of harm for invitees. (Doc. 1-1 at ¶12). She also claims that Defendants created the height difference and were negligent in failing to inspect the premises, failing to warn patrons of the height difference, failing to extend the handrail, failing to "provide contrast in surface colors for the area in question," and failing to repair or remedy the condition. (*Id.* at ¶¶ 17, 19).[4]

## Discussion

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is warranted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." The facts and all reasonable inferences are to be drawn in a light most favorable to the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). However, the Court will not "weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Summary judgment will be denied if a reasonable jury could find in favor of the nonmoving party. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

In cases based on diversity-jurisdiction and asserting Illinois state law claims, the Court applies federal procedural law and Illinois substantive law. *See, e.g., Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010). In order to prevail on an ordinary negligence claim under Illinois law, a plaintiff must prove that: (1) the defendant owed a duty of reasonable care to

---

[4] The Complaint contains multiple paragraphs numbered "17." This reference pertains to the one on page 6 of Doc. 1-1.

the plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury. *Galbreath v. Wal–Mart Stores, Inc.*, No. 10–2065, 2011 WL 1560669, at *4–5 (C.D.Ill. Apr. 25, 2011). Similarly, the Illinois Premises Liability Act, 740 ILCS 130/2 (1995), provides that "[t]he duty owed [invitees] is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." In other words, businesses have a duty to maintain their premises in a reasonably safe condition to avoid injuries to their customers. *Zuppardi v. Wal–Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014).

Defendants first argue that Plaintiff did not fall due to any acts or omissions on their part, but because she failed to lift her leg high enough to clear the curb – essentially attacking the "proximate cause" element of both the premises liability and negligence claims. (Doc. 19 at 7). Plaintiff contends that she did not lift her foot sufficiently to mount the curb cleanly because she did not realize the curb was there, due to the allegedly hazardous condition (height and lack of warning) of the curb. The parties' positions present a classic material dispute regarding proximate causation which is typically question for the jury… not the Court.

Defendants also argue that the height of the curb is sufficiently low to qualify under the "*de minimis* rule" which excepts from liability height deviations between sidewalk slabs of less than two inches. (Doc. 19 at 9). Originally, the *de minimis* rule barred actions against municipalities for minor defects in sidewalks on the basis that slight defects frequently found in traversed areas are not actionable as a matter of law. *Hartung v. Maple Inv. & Dev. Corp.*, 612 N.E.2d 885, 888 (1993). The rule has since been extended to sidewalks and walkways maintained by private owners or possessors. *Id.* at 889.

The *de minimis* rule generally applies to height deviations between sidewalk slabs and is intended to relieve property owners from the burden of having to maintain sidewalks in a

pristine, perfectly level condition. "It is common knowledge that sidewalks are constructed in slabs for the very reason that they must be allowed to expand and contract with changes in temperature…defects in sidewalks may be avoided by pedestrians more easily than defects in stairs." *Hartung*, 612 N.E.2d at 889, *citing Tracy v. Village of Lombard*, 451 N.E.2d 992 (1983). This reasoning, however, does not apply to intentionally constructed height deviations, such as curbs.

Here, the difference in height between the parking lot and the walkway around the restaurant did not the result from settling, temperature-related expansion/contraction cycles or anything similar. Rather, it was intentionally built into the premises. Notwithstanding Defendants' argument, the *de minimis* rule does not automatically insulate a property owner from liability for a less than 2 inch height difference between *any* walking surfaces, under all circumstances. *See also Bledsoe v. Dredge*, 681 N.E.2d 96, 97–98 (1997) (holding that the *de minimis* rule did not apply to a marble slab in partially-enclosed entryway, in part because it could be more easily monitored for defects and repaired than an outdoor sidewalk). Defendants offer no compelling reason to extend the rule to curbs, and this Court declines to do so.

Defendants' main contention is that they owed no duty to Plaintiff with regard to the curb, because it was an open and obvious hazard. Whether a duty exists is a question of law for the court to decide. *Forsythe v. Clark USA, Inc*., 864 N.E.2d 227 (2007). In determining whether a duty exists between an owner and an invitee, "a court should consider the following factors: (1) the reasonable foreseeability of injury, (2) the reasonable likelihood of injury, (3) the magnitude of the burden that guarding against injury places on the defendant, and (4) the consequences of placing that burden on the defendant." *Sollami v. Eaton*, 772 N.E.2d 215, 224 (2002).

"Under the open-and-obvious doctrine, a landowner is not liable for physical harm caused to invitees by any condition on the land whose danger is known or obvious to them, unless the landowner should anticipate the harm despite such knowledge or obviousness." *Id.* at 223. In this context, obvious means that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Bruns v. City of Centralia,* 21 N.E.3d 684, 690 (2014), *citing* Restatement (Second) of Torts § 343A cmt. b, at 219 (1965).

The open-and-obvious doctrine is not a per se bar to liability; rather it is a general principle that if a hazard is obvious to those coming onto the property, the first two factors in determining the existence of a duty (foreseeability of harm and reasonable likelihood of injury) are significantly reduced. *Id.* at 224, *citing Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826 (1996). Whether a hazard is open and obvious is normally a question of fact. But if no dispute exists as to the physical nature of the allegedly dangerous condition, it is a question of law. *Id.* (citations omitted). As there is no dispute as to the physical condition of the lip in this case, whether it was an open and obvious hazard is a question of law for the Court's determination.

Based on the totality of the record, the Court finds that, to the extent the curb can be considered a hazard, it was an open and obvious one. The presence and condition of the curb (a raise in height of approximately two inches between the drive-through lane of the parking lot and the elevated sidewalk) and the associated risk (that one might trip if one fails to step up) would be apparent to and recognized by a reasonable person exercising ordinary perception, intelligence, and judgment.

Plaintiff's husband was aware of the curb and he and Plaintiff had both successfully navigated the step many times (20 to 30 times based on Plaintiff's estimate). Plaintiff

acknowledges that the curb looked the same on the date of the incident as it normally did. Significantly, there is no evidence of any changed condition or foreign substance that would have rendered the curb any more hazardous or less obvious than the previous 19 or more times Plaintiff had successfully negotiated the step up. Whether she consciously took note of it or not, she was able to negotiate the step up as she navigated the parking lot environment numerous times before November 3, 2015.

The conclusion that a reasonable person would recognize and appreciate the curb is furthered bolstered by the fact that, according to the testimony of Todd Pahl and Tony Perry, thousands of other customers previously successfully navigated the same path into the south entrance of the restaurant for at least fourteen months without a reported incident. The evidence, taken as a whole, suggests that a reasonable customer of ordinary perception, intelligence, and judgment would perceive the existence of the step and the need to deal with it by stepping up to the sidewalk. As such, any hazard posed by the curb is open and obvious.

Plaintiff argues that, even if the curb qualifies as an open and obvious condition, the distraction exception applies. The distraction exception applies "where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Sollami*, 772 N.E.2d 215 (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). Importantly, the exception "will only apply where evidence exists from which a court can infer that plaintiff was actually distracted." *Bruns,* 21 N.E.3d at 691.

While Plaintiff testified that she "imagines [she] was looking in the window" because she "had to look at something" (Doc 19-2 at 50:1-6), she cites no actual evidence from which one could reasonably infer that she was in fact distracted. As such, she cannot invoke the distraction

exception on that basis. *See Bruns,* 21 N.E.3d at 692 ("Here, the only distraction identified by plaintiff is that her attention was fixed on the door and steps of the clinic. Although the record supports that plaintiff was, in fact, looking in that direction, rather than at the defective sidewalk, we conclude that the mere fact of looking elsewhere does not constitute a distraction.").

Plaintiff also points out that she had a cane in one hand and an oxygen pack in the other, and argues that it was foreseeable that "persons using this path may become distracted by things they were carrying" like a cane and oxygen. (Doc. 23 at 21). Once again, those facts alone do not constitute an actual distraction. Likewise, Plaintiff's retained expert engineer Keith Vidal's conclusory assertion that a "fast food environment" can "distract patrons" (Doc. 30 at 22) does not suffice. The distraction exception is therefore inapplicable.

"[A] defendant is ordinarily not required to foresee injury from a dangerous condition that is open and obvious." *Bruns*, 21 N.E.3d at 694. That is because "it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks, making the likelihood of injury slight." *Id.* at 695 (quotation omitted). Nevertheless, Plaintiff argues that it is fair to place the burden on Defendants, as they "already had a burden to provide invitees, such as Plaintiff, a safe means of ingress and egress." (*Id.* at 26) (citing *Harris v. Old Kent Bank*, 735 N.E.2d 758, 764 (2000) and *Hanks v. Mount Prospect Park District*, 244 Ill. App.3d 212, 217 (1993)). The restaurant did provide a safe ingress and egress in the form of a "barrier-free accessible route" from the handicap parking spaces on both sides of the restaurant. (Doc. 19-5 at ¶11). Beyond that, Defendants simply owed Plaintiff no duty relative to the curb. Thus, Plaintiff's claims fail as a matter of law.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion for Leave to Supplement (Doc. 32) is **GRANTED**, and Defendant's corresponding Motion to Strike (Doc. 31) is **DENIED**. Defendants' Motion for Summary Judgment (Doc. 19) is **GRANTED** and the case is **DISMISSED with prejudice**. All other pending motions are **DENIED** as moot. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff and to close the case.

**IT IS SO ORDERED.**

**DATED: February 28, 2018**

        **s/ Staci M. Yandle**
        **STACI M. YANDLE**
        **United States District Judge**